**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DION DAWKINS,

Plaintiff,

v.

R & D CONTRACTING, INC. and
ROBERT J. BRICELAND

Defendants.

Case No. 1:24-cv-00043-LJV

---

<b>MEMORANDUM OF LAW</b>

---

Robert D. Bannister, Esq.
KENNEY SHELTON LIPTAK NOWAK LLP
*Attorneys for R&D Contracting and Robert J. Briceland*
The Calumet Building
233 Franklin Street
Buffalo, New York 14202
Tel.  (716) 853-3801
Fax. (716) 853-0265
rdbannister@kslnlaw.com

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**............................................................................................... iii

**PRELIMINARY STATEMENT** ......................................................................................... 1

**DISCUSSION** ....................................................................................................................... 2

    **I.**    **Legal Standard for Amendment of Scheduling Order** ................................... 2

        a.    The Defendants Have Good Cause for Delay................................................. 3

        b.    Amendment Will Not Prejudice Any Party.................................................... 4

    **II.**    **Impleader Scope, Purpose, and Application**.................................................. 5

        a.    The Proposed Third-Party Claims are Proper Under Rule 14(a) Because They Are Derivative of and Contingent Upon the Underlying Contractual Dispute ..................... 6

        b.    The Proposed Third-Party Complaint States a Viable Claim for Tortious Interference with Contractual Relations .............................................................................. 8

        c.    The Proposed Third-Party Complaint States a Viable Claim for Tortious Interference with Prospective Business Relations ............................................................. 9

**CONCLUSION** ...................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Bank of India v. Trendi Sportswear Inc.*, 239 F.3d 428 (2d Cir. 2000) ..................................................5, 7

*Callahan v. County of Suffolk*, 96 F.4th 362 (2d Cir. 2024)..........................................................................2

*Carnrite v. Granda Hosp. Group, Inc.*, 175 F.R.D. 439 (W.D.N.Y. 1997)..................................................2

*Comfort Systems USA (Syracuse), Inc. v. Gateway Property Solutions, Ltd.*, No. 21-CV-6017 (CJS), 2021 WL 4993079

(W.D.N.Y. Oct. 27, 2021)...........................................................................................................................8

*Conover v. Goodyear Tire & Rubber Company*, No. 17CV486V, 2019 WL 13219378 (W.D.N.Y. May 2, 2019) ........6

*Dery v. Wyer*, 265 F.2d 804 (2d Cir. 1959) ..................................................................................................5

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445 (N.Y. 1980) ..................................10

*Hough v. Petty*, No. 21-CV-4568-ENV-JRC, 2023 WL 7687866 (E.D.N.Y. Oct. 10, 2023) ........................3

*IBasis Global, Inc. v. Diamond Phone Care, Inc.*, 278 F.R.D. 70 (E.D.N.Y. 2011).................................5, 6

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007).....................................................2, 4

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29 (2d Cir. 1984)...........................................2

*Nat'l Bank of Cananda v. Artex Indus., Inc.*, 627 F.Supp. 610 (S.D.N.Y. 1986) ...........................................5

*New York Bay Capital, LLC, v. Cobalt Holdings, Inc.*, No. 1:19-CV-3618-GHW, 2020 WL 3181661 (S.D.N.Y. June

12, 2020)......................................................................................................................................................2

*Olympic Corp. v. Societe Generale*, 462 F.2d 376 (2d Cir. 1972)..................................................................5

*Plymouth Capital, LLC v. Montage Fin. Group, Inc.*, 219 N.Y.S.3d 372 (N.Y. App. Div. 2d Dept. 2024) ...............8, 9

*Ray v. Stockton*, 80 N.Y.S.3d 569 (N.Y. App. Div. 4th Dept. 2018) ...........................................................10

*Rd Rock Sourcing, LLC, v. JGX, LLC,* No. 21 CIV. 1054 (JPC), 2025 WL 524024 (S.D.N.Y. Feb. 18, 2025) ............2

*State of N.Y. v. Solvent Chem Co., Inc.*, 875 F. Supp. 1015 (W.D.N.Y 1995) ...............................................5

*Thomas v. ConAgra Foods, Inc.*, No. 620CV06239EAWMJP, 2022 WL 3699408 (W.D.N.Y. Aug. 26, 2022) ............2

**Rules**

Fed. R. Civ. P. 14 ....................................................................................................................................5, 6, 11

Fed. R. Civ. P. 16 ............................................................................................................................................2

**PRELIMINARY STATEMENT**

Defendants, R&D CONTRACTING, INC., and ROBERT J. BRICELAND, submit this Memorandum of Law, alongside the Attorney Declaration of Robert D. Bannister, Esq. (hereinafter "Bannister Decl.") in support of its Motion for Leave to Serve a Third-Party Complaint on non-parties, STONEWOOD BUILDERS, LLC, (hereinafter "Stonewood") and STEVEN OHRENSTEIN (hereinafter "Mr. Ohrenstein"), for tortious interference with business and contractual relations under New York State law. The underlying action arises from New York State law claims brought by Plaintiff against Defendants, brought before this Court pursuant to diversity jurisdiction under 28 U.S.C.§ 1983, for breach of contract in connection with a home improvement project at Plaintiff's residence located at 100 Stewart Court, East Aurora, New York 14052 (hereinafter "subject premises").

The proposed third-party claims arise directly from the same operative facts underlying Plaintiff's breach of contract action and are based on newly discovered evidence obtained through a non-party subpoena. Specifically, documents produced by Stonewood on April 4, 2025, reveal that Mr. Ohrenstein, acting individually and as the owner of Stonewood, encouraged and facilitated Plaintiff's breach of the home improvement contract that forms the basis of the underlying action. These communications include explicit legal instructions to deny Defendants access to the subject premises, withhold payment, and to initiate legal action with the assistance of Mr. Ohrenstein.

As set forth more fully below, Defendants have demonstrated good cause for filing this motion outside the initial scheduling deadline, and the proposed third-party claims are timely and legally viable under Rule 14(a). The inclusion of Stonewood and Mr. Ohrenstein in this litigation will promote judicial efficiency, prevent duplicative proceedings, and ensure that all claims arising from this dispute are adjudicated in a single forum.

1

## DISCUSSION

### I.    Legal Standard for Amendment of Scheduling Order

Defendants acknowledge at the outset that this motion is filed after the deadline for impleader set by scheduling order has passed. Accordingly, they recognize their obligation to demonstrate 'good cause' for seeking leave to amend. *See Rd Rock Sourcing, LLC, v. JGX, LLC*, No. 21 CIV. 1054 (JPC), 2025 WL 524024 at *4 (S.D.N.Y. Feb. 18, 2025) (citing Fed. R. Civ. P. 16(b)(4)) ("After a court has entered a scheduling order, a party requesting leave to implead a third party must show 'good cause' if the deadline to add parties to the litigation has passed."). "Rule 16's good cause standard applies to motion to implead if the case management order sets a deadline for such motions." *New York Bay Capital, LLC, v. Cobalt Holdings, Inc.*, No. 1:19-CV-3618-GHW, 2020 WL 3181661 at *2 (S.D.N.Y. June 12, 2020). Regardless, "[t]he decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion . . ." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984). *See also Thomas v. ConAgra Foods, Inc.*, No. 620CV06239EAWMJP, 2022 WL 3699408 at *4 (W.D.N.Y. Aug. 26, 2022) ("A district court has broad discretion in determining whether to grant leave to amend").

"Whether good cause exists turns on the diligence of the moving party." *Callahan v. County of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024) (internal quotation marks omitted). "In other words, to demonstrate, 'good cause' a party must show that the timetable could not have reasonably been met." *Carnrite v. Granda Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997). Diligence "is not, however, the only consideration." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including . . . whether allowing the amendment at this

stage of the litigation will prejudice the [non-moving party]." *Id. See also Hough v. Petty*, No. 21-CV-4568-ENV-JRC, 2023 WL 7687866 at * 3 (E.D.N.Y. Oct. 10, 2023) ("The party opposing the amendment has the burden of demonstrating any bad faith, prejudice of the proposed amendment, or futility of the proposed amendment").

> a.       The Defendants Have Good Cause for Delay

Here, Defendants acted diligently in pursuing the relevant discovery and have now moved to implead Stonewood and Mr. Ohrenstein within one week upon learning facts that support a plausible claim of tortious interference under New York State Law (Bannister Affirmation, ¶¶ 10-20). Although the deadline to join additional parties—August 30, 2024—has passed, Defendants did not become aware of the potential basis for third-party claims until April 4, 2025, when Stonewood produced communications that strongly suggest Mr. Ohrenstein, acting both individually and on behalf of Stonewood, actively encouraged Plaintiff to breach his contractual obligations to Defendants, facilitated the termination of Defendants' involvement in the project, and offered legal and logistical support to aid in the breach (*Id.* at ¶¶ 9, 19-20).

Prior to receiving these communications, Defendants had no legal or factual basis to assert a claim against Stonewood or Mr. Ohrenstein. While Plaintiff identified Stonewood in interrogatory responses served on January 17, 2025, that response only identified Stonewood's name (*Id.* at ¶¶ 10, 12). The invoices produced on February 28, 2025, likewise, lacked any detail and did not independently support a claim (*Id.* ¶¶ 15-16). It was not until Stonewood responded to Defendants' subpoena with a letter dated April 2, 2025 (*Id.* at Exhibit M) producing documents evidencing coordination between Plaintiff and Mr. Ohrenstein regarding "kicking [Defendants] out of [Plaintiff's] house, not paying them, and sending them a letter from an attorney." (*Id.* at ¶ 22).

b.    Amendment Will Not Prejudice Any Party

Allowing Defendants to implead Stonewood and Mr. Ohrenstein at this stage will not result in any undue prejudice against Plaintiff. *See Kassner*, 496 F.3d at 244. First, no depositions have been scheduled and discovery remains open until at least September 15, 2025, affording the Plaintiff ample opportunity to explore and address any new claims arising from the proposed third-party complaint (*See* Bannister Decl., ¶ 26). Second, Plaintiff has been aware of the proposed third-party defendants in—Stonewood and Mr. Ohrenstein—since at least July 26, 2023, when Mr. Ohrenstein first recommended a course of action to breach the contract between Plaintiff and Defendants (Bannister Decl., Exhibit N, p. 24). Plaintiff himself participated in the very communications that now give rise to the third-party claim and thus cannot credibly claim surprise or lack of preparedness (Bannister Decl., ¶ 22).

Moreover, any delay in asserting this claim is directly attributable to Plaintiff's own failure to comply with discovery obligations (*Id.* at ¶¶ 11, 14, 16, 25). Defendants served a Request for Production on May 23, 2024, expressly requesting communications with contractors and subcontractors (*Id.* at ¶ 11). Plaintiff failed to produce these text messages at any point and the Defendants were unable to obtain these text messages until serving a subpoena on a non-party (*Id.* at ¶¶ 18-21). Under these circumstances, permitting impleader now would not prejudice the Plaintiff but rather serve the interest of fairness and judicial efficiency by allowing all claims arising from the same operative facts be resolved in a single proceeding.

Nor will Stonewood or Mr. Ohrenstein suffer any prejudice if implead at this stage. The documents provided by Stonewood make clear that Mr. Ohrenstein was not only aware of the dispute between the Plaintiff and Defendants but actively encouraged Plaintiff to pursue legal action against Defendants with his attorney and business partner "Jim" (*See* Bannister Declaration,

4

¶ 22). Additionally, Stonewood and Mr. Ohrenstein will not be prejudiced by their inclusion in this action, as discovery is still ongoing and no depositions have been conducted.

## II.    Impleader Scope, Purpose, and Application

"Under Fed. R. Civ. P. 14(a), a defendant may implead a third party 'who is or may be liable to him for all or part of the plaintiff's claim against him.'" *State of N.Y. v. Solvent Chem Co., Inc.*, 875 F. Supp. 1015, 1021 (W.D.N.Y 1995). "The rule 'was designed to permit the liberal joinder of parties so that judicial energy could be considered and consistency of results guaranteed.'" *Id.* (quoting *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972)). "The general purpose of the rule was to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant." *Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir. 1959). However, the impleader action "must be dependent on, or derivative of, the main claim." *IBasis Global, Inc. v. Diamond Phone Care, Inc.*, 278 F.R.D. 70, 74  (E.D.N.Y. 2011) (citing *Bank of India v. Trendi Sportswear Inc.*, 239 F.3d 428, 438 (2d Cir. 2000). "Regardless of the type of claim asserted, 'the outcome of the third-party claim must be contingent upon the outcome of the main claim.'" *Id.* (quoting *Nat'l Bank of Cananda v. Artex Indus., Inc.*, 627 F.Supp. 610, 613 (S.D.N.Y. 1986).

"Factors relevant to determining whether to grant leave to implead a third party include: (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *Id.* at 74.

5

Factors (a) through (c) have already been addressed in the context of Rule 16(b)'s 'good cause' standard and weigh in favor of granting leave here. As previously discussed, Defendants did not unduly delay in filing this motion; they acted promptly upon obtaining sufficient evidence from Stonewood on April 4, 2025 (Bannister Declaration, ¶ 21), which revealed for the first time a viable basis for a tortious interference claim against Stonewood and Mr. Ohrenstein (*Id.* at ¶ 22). Moreover, with fact discovery still ongoing and no depositions yet conducted (*Id.* at ¶ 27), allowing impleader at this juncture will not delay or complicate resolution of this case. To the contrary, it will promote judicial economy by consolidating related claims that arise from the same core facts. Nor will there be prejudice to Plaintiff or the proposed third-party defendants, who have both been actively involved in the underlying events giving rise to this litigation (*Id.* at ¶ 22). Accordingly, the discretionary factors strongly support granting Defendants' motion for leave under Rule 14(a). *See Conover v. Goodyear Tire & Rubber Company*, No. 17CV486V, 2019 WL 13219378 at *3 (W.D.N.Y. May 2, 2019) ("An impleader action such as a third-party complaint may be granted to avoid circuity of action and eliminate duplication of suits based on closely related matters . . . as a result, a timely action for impleader should be granted except when it will delay or disadvantage or the third-party claim obviously lacks merit") (internal quotation marks omitted).

a.    The Proposed Third-Party Claims are Proper Under Rule 14(a) Because They Are Derivative of and Contingent Upon the Underlying Contractual Dispute

Here, Defendants' proposed third-party claims for tortious interference are not only factually intertwined with the main action, they are legally dependent on how the Court construes and resolves the underlying breach of contract dispute between Plaintiff and Defendants. Plaintiff's Complaint is rooted in allegations that the Defendants breached a home improvement contract entered into in 2023 for work at the Plaintiff's New York residence (*See* Bannister Declaration, Exhibit A, the Complaint). The very same contract forms the foundation of Defendants' proposed

6

third-party claims against Stonewood Builders LLC and its principal, Steven Ohrenstein. Specifically, the third-party complaint will allege that Mr. Ohrenstein, both individually and as an agent of Stonewood, encouraged and induced the Plaintiff to breach this exact contract by refusing payment and denying Defendants access to the property (*See* Bannister Dec.. Exhibit O, Proposed Third-Party Complaint)—a central issue that the Court will necessarily examine in adjudicating the Plaintiff's claims.

Thus, the resolution of the main action will necessarily involve determinations as to the validity, scope, and terms of the contract, the parties' respective performance under it, and whether Plaintiff's alleged conduct constitutes a breach. The third-party claims are inextricably tied to those findings (*Id.*). For example, if the Court concludes that Plaintiff wrongfully breached the contract or, in the alternative, that Defendants wrongfully breached the contract, that determination will directly inform whether Mr. Ohrenstein's conduct – encouraging the Plaintiff to withhold payment and block access – was actionable tortious interference.

Because the third-party claims fail or succeed with the interpretation and enforcement of the same contract at issue in the Plaintiff's claims, they plainly satisfy the requirement that they be derivative or contingent in nature. *See Bank of India*, 239 F.3d at 438 ("the impleader action must be dependent on, or derivative of, the main or third-party claim").  As previously stated, "[t]he general purpose of Rule 14(a) is to serve judicial economy, discourage inconsistent results, and limit prejudice incurred by defendant by removal of the time lag between a judgment against the defendant and a judgment over a third-party." *Comfort Systems USA (Syracuse), Inc. v. Gateway Property Solutions, Ltd.*, No. 21-CV-6017 (CJS), 2021 WL 4993079 at *2 (W.D.N.Y. Oct. 27, 2021) (internal quotation marks omitted). Those goals would undermined if Defendants were

7

required to initiate a separate lawsuit against Mr. Ohrenstein and Stonewood involving the same factual and contractual background now before the Court.

b.    The Proposed Third-Party Complaint States a Viable Claim for Tortious Interference with Contractual Relations

Under New York law, "[t]he elements of a cause of action for tortious interference with a contract are (1) the existence of a valid contract between the plaintiff and a third-party, (2) the defendants knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of that contract without justification, and (4) damages." *Plymouth Capital, LLC v. Montage Fin. Group, Inc.*, 219 N.Y.S.3d 372, 375 (N.Y. App. Div. 2d Dept. 2024) (internal quotation marks omitted). "The plaintiff must further alleged facts sufficient to show that the contract would not have been breached but for the defendants conduct." *Id.* at 375-76 (internal quotation marks omitted).

Here, Defendants' proposed complaint alleges facts sufficient to support each element of this cause of action. First, the complaint clearly pleads the existence of a valid contract between Plaintiff and Defendants (Bannister Decl., Exhibit O, Proposed Third-Party Compl., ¶¶ 11, 22). Second, it alleges that Mr. Ohrenstein and Stonewood Builders were aware of the Contract between Plaintiff and Defendants at the time of Mr. Ohrenstein's communications with Plaintiff (*Id.* at ¶¶ 23-24). Text messages sent by Mr. Ohrenstein confirm this knowledge, as he referred to the contract's subject matter and expressly stated that Defendants would not be able to complete the work (*See* Bannister Decl., ¶ 22).

Third, the Proposed Third-Party Complaint sets forth detailed allegations that Stonewood and Mr. Ohrenstein intentionally and unjustifiably induced Plaintiff to breach the contract (Bannister Decl., Exhibit O, Proposed Third-Party Complaint ¶¶ 16-21, 25-27). These representations went beyond mere opinion or competition and rose to the level of targeted,

8

deliberate interference with the performance of a Contract (*Id.*). Moreover, the Proposed Third-Party Complaint adequately alleges that, at the time these communications begun, Plaintiff had not yet decided to terminate his contractual relationship with Defendants, as evidenced by his written willingness to involve a Defendants representative in the ongoing discussions with Mr. Ohrenstein and Stonewood (*Id.* at ¶¶ 28-29). Thus, it properly alleges that, but for Mr. Ohrenstein's unlawful encouragement, Plaintiff may not have breached the Contract. *See Plymouth Capital*, 219 N.Y.S.3d at 375-76. Finally, the Defendants alleged they suffered actual damages as a result of Plaintiff's breach including approximately $38,000 in unpaid work, plus attorneys fees incurred in defending against the underlying suit (Bannister Decl., Exhibit O, Proposed Third-Party Complaint, ¶ 30).

c.     The Proposed Third-Party Complaint States a Viable Claim for Tortious Interference with Prospective Business Relations

"To establish a cause of action for tortious interference with prospective business relations, the plaintiff must allege (1) that the plaintiff had a business relationship with a third-party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Id.* at 376 (internal quotation marks omitted). "The plaintiff must also meet a more culpable conduct standard which is met where the interference with prospective business relations was accomplished by wrongful means . . . ." *Id. See also Ray v. Stockton*, 80 N.Y.S.3d 569, 572 (N.Y. App. Div. 4th Dept. 2018) ("The term 'wrongful means' has been defined by the Court of Appeals as conduct amounting to a crime or independent tort") (internal quotation marks omitted).

The Proposed Third-Party Complaint satisfied each of these elements (*See* Bannister Decl., Exhibit O, Proposed Third-Party Compl.) First, it alleges the existence of an ongoing business relationship between Plaintiff and Defendants (*Id.* at ¶¶ 11, 31). Second, it clearly pleads that both

Mr. Ohrenstein and Stonewood Builders were aware of this relationship (*Id.* at ¶¶ 32, 33). This allegation is bolstered by the text message exchanges (Bannister Decl., ¶¶ 22). Third, the Proposed Complaint alleges that interference was accomplished through improper and unlawful means, including the unauthorized practice of law in violation of N.Y. Judiciary Law § 478 (Bannister Decl., Exhibit O, Proposed Third-Party Compl., ¶¶ 36-37). The messages cited in the pleading show that Mr. Ornstein, who is not a licensed attorney, offered legal advice, recommended legal action, and referred Plaintiff to a "business partner" attorney to facilitate Plaintiff's breach of contract (*Id.* at ¶¶ 34-35). Mr. Ohrenstein and Stonewood's actions likely also violate multiple other statues and constitute independent torts, which are cited in Proposed Third-Party Complaint (*Id.* at ¶ 39). The wrongful conduct, as alleged, meets the standard to sufficiently plead a cause of action for tortious interference with prospective business relations. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980) ("'Wrongful means' includes physical violence, fraud or misrepresentation, civil suits, and criminal prosecutions"). Finally, Defendants sufficiently alleged that the prospective business relationship was injured and Briceland was damaged as a result of Stonewood and Mr. Ohrenstein's breach (Bannister Decl., Exhibit O, Proposed Third-Party Complaint, ¶ 40).

Accordingly, because the third-party claims are both substantively viable and procedurally appropriate under Fed. R. Civ. P. 14(a), and because none of the discretionary factors weigh against granting impleader, the Court should grant Defendants' leave to file the Proposed Third-Party Complaint.

## CONCLUSION

For the foregoing reasons, Defendants have demonstrated both the requisite good cause under Rule 16(b) and the substantive and procedural propriety of impleader under Rule 14(a).

10

Defendants acted diligently in seeking leave to file the Proposed Third-Party Complaint promptly upon obtaining documentary evidence that gave rise to viable claims against Stonewood Builders LLC and Steven Ohrenstein. The proposed claims are not only factually and legally intertwined with the Plaintiff's claims in the main action, but also derivative of and contingent upon the Court's determination of the underlying breach of contract issues. Moreover, permitting impleader will not delay or complicate the proceedings, nor will it prejudice Plaintiff or proposed Third-Party Defendants, both of who were actively involved in the conduct giving rise to the third-party claims and have been on notice of their potential liability. On the contrary, allowing impleader will serve the interests of judicial economy, consistency of outcomes, and fairness by ensuring that all claims arising from the same operative facts are resolved in a single action. Accordingly, Defendants respectfully request this Court grant their motion for leave to file the Proposed Third-Party Complaint.

DATED:     Buffalo, New York
            April 10, 2025

                                  KENNEY SHELTON LIPTAK NOWAK LLP

                                  Robert D. Bannister, Esq.

11